UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NY LOFT, LLC,<br><br>　　　　Plaintiff,<br>　　v.<br><br>LOFTEX HOME, LLC,<br><br>　　　　Defendant. | Civil Action No. 1:26-cv-10463 |

## COMPLAINT

NOW COMES Plaintiff NY Loft, LLC ("NY Loft") and seeks a declaratory judgment of non-infringement and asserts a claim for damages against Defendant Loftex Home, LLC ("Loftex") for the reasons that follow.

1. NY Loft brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking a declaration that its conduct does not infringe Loftex's LOFT trademark (U.S.P.T.O. Registration Nos. 4,811,321 and 4,811,322) (collectively, the "Loftex Mark"), constitute unfair competition under federal or state law, or otherwise violate Loftex's federal, state, or common law rights in the Loftex Mark.

2. This action arises out of Loftex's demands set out initially in its June 13, 2022 letter to NY Loft that NY Loft cease and desist from using the NY LOFT mark (the "NY Loft Mark") in connection with bath towels (the "NY Loft Goods"), and its threats to take action against NY Loft if NY Loft does not comply with Loftex's demands. Loftex subsequently made good on its threats in 2025 by submitting Amazon takedown requests,

made further threats in email correspondence, and reasserted such threats as recently as an email dated December 9, 2025. NY Loft denies that it has infringed or otherwise violated any rights of Loftex.

3.     NY Loft further seeks to recover damages resulting from the temporary takedown of the Amazon listings of its goods as a result of Loftex's improper takedown requests to Amazon.

## JURISDICTION AND VENUE

4.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.*, and the common law of the Commonwealth of Massachusetts.

5.     This Court has subject matter jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338, 2201, and 2202, and supplemental jurisdiction over the common law claim pursuant to 28 U.S.C. § 1367.

6.     This Court has personal jurisdiction over Loftex because it has availed itself of the rights and benefits of the laws of Massachusetts, and it has conducted business using the Loftex Mark in Massachusetts.  Specifically, Loftex sells goods bearing the Loftex Mark via major national retailers such as Wal-Mart and Amazon.  Recent review of Wal-Mart and Amazon websites shows that the Loftex goods are available for delivery to Massachusetts. Upon information and belief, the availability of the Loftex goods on these platforms has

resulted in significant sales to residents of Massachusetts. Further, upon information and belief, Loftex sells the Loftex Goods in physical Wal-Mart locations within Massachusetts.

7.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in this judicial district and has directed its business activities at this judicial district. Further, a substantial part of the events giving rise to the claim occurred in this judicial district because NY Loft makes the NY Loft Goods available to residents of Massachusetts via Amazon and has sold a substantial amount of the NY Loft Goods to residents of Massachusetts.

## PARTIES

8.     NY Loft is a Delaware limited liability company with an address of 1624 Market Street, Suite 202, Denver, Colorado 80202. NY Loft sells the NY Loft Goods via Amazon to jurisdictions throughout the United States, including Massachusetts.

9.     Loftex is a Delaware limited liability company with an address of 58 West 40th Street, 10th Floor, New York, NY 10018. Loftex sells Loftex goods via Wal-Mart and Amazon to jurisdictions throughout the United States, including Massachusetts.

## FACTS
### NY Loft and the NY Loft Mark

10.    Plaintiff is an e-commerce home textile company that sells bath towels on Amazon using the NY Loft Mark as shown here:



11.     NY Loft uses the NY Loft Mark in connection with the NY Loft Goods as both a standard character mark and in the following stylized format:



12.     In or about 2021, NY Loft began using the NY Loft mark in connection with the sale of the NY Loft Goods on Amazon.

13.     Since then, the NY Loft Goods have been available for shipment nationwide on Amazon.

14.     According to Amazon analytics, the NY Loft Goods have been viewed millions of times and ordered hundreds of thousands of times.

15. The NY Loft Goods have been sold to customers with a shipping address in Massachusetts thousands of times.

16. The NY Loft Goods have been reviewed on Amazon approximately 1,500 times, and have an average 4.3 star rating.

## Loftex and the Loftex Mark

17. Loftex claims it began using the Loftex Mark to sell bath towels, hand towels; towels and wash cloths (the "Loftex Goods") in or about 2011.

18. Loftex sells the Loftex Goods online via Wal-Mart and Amazon. For example, Loftex is available online via Wal-Mart as shown here:



19. Upon information and belief, Loftex also sells the Loftex Goods in Wal-Mart physical locations.

20. Loftex obtained registration with the U.S.P.T.O. in Class 024 for the Loftex Mark in 2015.

21. In addition to the Loftex Mark for LOFT in Class 024, a recent review of U.S.P.T.O. records identified eight other valid and subsisting marks containing the term LOFT in Class 024, including HOME LOFT (Reg. No. 4,734,415), G-LOFT (Reg. No. 4,921,500), and BROOKLYN LOFT (Reg. No. 6,191,386).

22. A search of U.S.P.T.O. records that is not limited to Class 024 indicates there are 413 registered trademarks containing the term "Loft."

**Actual Controversy**

23. This matter presents an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

24. On or about June 13, 2022, NY Loft received a letter from Loftex objecting to NY Loft's use of the NY Loft Mark and demanding that NY Loft cease use of the NY Loft Mark.

25. NY Loft received Loftex's letter at a time that Loftex was opposing its application to register NY LOFT in Class 024 with the U.S.P.T.O.

26. NY Loft did not obtain registration because the U.S.P.T.O. examiner rejected its application, citing likelihood of confusion with U.S. Registration No. 3329155 for NYLOFT and U.S. Registration No. 4823540 for NEW YORK LOFT.

27.     The U.S.P.T.O. did not cite the Loftex Mark against NY Loft's application.

28.     According to U.S.P.T.O. records, the Loftex Mark and NEW YORK LOFT co-existed on the Principle Register in Class 024 from approximately 2015 to 2021. The NEW YORK LOFT MARK was cancelled sometime following September 29, 2021, for failure to submit a declaration regarding use of the mark in commerce.

29.     The parties exchanged correspondence in 2022 and 2023 regarding their respective rights.

30.     In June 2023, counsel for NY Loft advised that the company was "migrating away" from the NY Loft Mark and presently had only one "towel program." Counsel further advised that it would "take some time" to fully migrate away from the brand.

31.     On June 13, 2023, in response to Loftex's request that NY Loft clarify its timing, NY Loft's counsel stated: "My sense of the client's timeframe for moving away from the current mark on the remaining good[s] was on the order of between 1-3 years. Let me know if you'd like me to confirm with the client though."

32.     On June 14, 2023, Loftex advised that it would "stand down" for the time being based on counsel for NY Loft's statement that it was phasing out the NY Loft Mark, but that Loftex would "not hesitate to proceed if the use should escalate and/or not be phased out or in the event of actual confusion or an attempt by your client to draw an association with Loftex."

33. NY Loft sold towels on Amazon pursuant to the NY Loft Mark in 2024 and 2025, and continues to do so in 2026.

34. On or about June 29, 2025, NY Loft received notice that Loftex had submitted takedown requests to Amazon targeting the NY Loft Goods.

35. According to the notice, Loftex submitted takedown requests stating as follows:

> We, Leason Ellis LLP, are attorneys for Loftex Home, LLC. Loftex owns exclusive rights in the trademark LOFT in connection with, among other goods: Bath towels; Hand towels; Towels; and Wash cloths. That mark is registered with the USPTO under Reg. No. 4811321. The Amazon seller complained of is using the trademark LOFT in connection with, among other goods: Bath towels; Hand Towels; Towels; and Wash cloths. Loftex has not authorized any such use. This seller is aware of Loftex and its registered trademark rights and is therefore willfully infringing Loftex's rights in the LOFT trademark.

36. As a result of the takedown requests, the NY Loft Goods were temporarily unavailable on Amazon.

37. The NY Loft Goods consistently sold daily on Amazon for years prior to the takedown requests.

38. NY Loft lost sales as a result of the NY Loft Goods being temporarily unavailable.

39. Loftex was aware that its request would result in the removal of the NY Loft Goods from Amazon and result in lost sales.

40. Loftex made its request for the purpose of harming NY Loft by preventing it from achieving sales on Amazon.

41. NY Loft also lost placement on the Amazon product page due to the NY Loft Goods being temporarily unavailable, meaning that the links to pages where consumers could purchase its towels were less prominent in search results.

42. NY Loft was able to restore its Amazon listings after submitting correspondence directly to Amazon.

43. In an August 21, 2025 email, counsel for Loftex demanded that NY Loft commit to cease using the NY Loft Mark by a date certain, and threatened that if it did not Loftex would "proceed to enforce its rights."

44. In a September 8, 2025 email, counsel for Loftex reiterated its threat to "proceed with enforcement as outlined in [the] August 21 email" if NY Loft did not acquiesce to its demands. In particular, counsel stated that Loftex would "submit takedown requests for any remaining NY LOFT [Amazon Standard Identification Numbers] without further notice, in addition to pursuing other remedies."

45. Between September and December 2025, counsel for the parties attempted to negotiate a resolution.

46. On December 9, 2025, Loftex advised that it was uninterested in continuing to pursue settlement discussions along the lines proposed and re-asserted the position outlined in its September 8, 2025 email.

47. Counsel for NY Loft disputed Loftex's claims, including in correspondence dated August 18, 2025, and September 5, 2025.

48. Loftex's claims that NY Loft is violating its rights in the Loftex Mark are meritless because, among other reasons: (a) the subsisting registrations of other similar marks in Class 024, including but not limited to BROOKLYN LOFT, render the Loftex Mark weak; (b) the initial element of NY LOFT—namely, "NY"—differentiates it in the mind of consumers from LOFT; and (c) the marks have co-existed since 2021 without actual confusion.

49. Based on these facts, a justiciable controversy exists between NY Loft and Loftex as to whether NY Loft's conduct constitutes trademark infringement or otherwise violates any rights in the Loftex Mark that Loftex may have.

50. Due to Loftex's threats and accusations, NY Loft is entitled to a judicial declaration that its conduct does not infringe Loftex's alleged trademark rights or otherwise violates Loftex's rights in the Loftex Mark. Without a declaration to this effect, Loftex will continue to wrongfully allege that NY Loft's use of the NY Loft Mark infringes Loftex's alleged rights, thereby causing NY Loft irreparable injury and damage.

**COUNT ONE (Declaratory Judgment of No Trademark Infringement)**

51.     NY Loft repeats and realleges the above paragraphs as if fully set forth herein.

52.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that NY Loft has not infringed and is not infringing Loftex's alleged trademark rights in Loftex's Mark.

53.     A judicial declaration is necessary and appropriate so that NY Loft may determine its right to continue using NY Loft's Mark to sell the NY Loft Goods.

54.     NY Loft is entitled to a declaratory judgment that NY Loft's use of the NY Loft Mark is not likely to cause consumer confusion and does not infringe, either directly or indirectly, any trademark rights of Loftex under 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a), or common law.

**COUNT TWO (Declaratory Judgment of No Unfair Competition)**

55.     NY Loft repeats and realleges the above paragraphs as if fully set forth herein.

56.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that NY Loft has not engaged in and is not engaging in unfair competition with Loftex.

57. A judicial declaration is necessary and appropriate so that NY Loft may determine its right to continue using NY Loft's Mark to sell the NY Loft Goods.

58. NY Loft is entitled to a declaratory judgment that NY Loft's use of the NY Loft Mark and its conduct described herein does not constitute unfair competition under 15 U.S.C. § 1125(a) or common law.

### COUNT THREE:  Tortious Interference with Contractual Relations

59. NY Loft repeats and realleges the above paragraphs as if fully set forth herein.

60. NY Loft has a contract with third-party Amazon to sell goods via Amazon's web platform.

61. Loftex knowingly attempted to induce Amazon to break that contract by submitting improper and false takedown requests of the NY Loft Goods.

62. Loftex acted with improper motive in that its motive was to harm NY Loft by preventing it from making sales on Amazon, harming its reputation, and diminishing its prominence in Amazon search results.

63. Loftex acted by improper means in that it misrepresented the nature of NY Loft's activity on Amazon in its takedown request by claiming that NY Loft was using LOFT to sell goods on Amazon mark when in fact NY Loft was using NY LOFT, which is facially distinguishable from  LOFT.

64.     NY Loft was harmed by Loftex's improper conduct because it resulted in Amazon temporarily removing its listings, which caused lost sales and a less prominent placement in Amazon search results after the listings were restored.

**PRAYER FOR RELIEF**

WHEREFORE, NY Loft respectfully requests that this Honorable Court:

1.      Adjudge that NY Loft has not infringed and is not infringing, either directly or indirectly, any valid and enforceable trademark rights of Loftex under 15 U.S.C. § 1114(1), 15 U.S.C. § 1125(a), or common law;

2.      Adjudge that that NY Loft has not engaged in and is not engaging in unfair competition in violation of 15 U.S.C. § 1125(a) or any common law rights of Loftex;

3.      Award NY Loft any relief it may be entitled to for Loftex's tortious interference with contractual relations, including but not limited to actual damages, attorneys' fees, lost profits, pre- and post-judgment interest, and an injunction prohibiting Loftex from submitting further Amazon takedown requests;

4.      Restrain and enjoin Loftex from alleging, representing, or otherwise stating that NY Loft's use of the NY Loft Mark infringes any rights of Loftex in Loftex's Mark or constitutes unfair competition or is unlawful under federal, state, or common law;

5.      Declare NY Loft the prevailing party and this case as exceptional, and award NY Loft its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a); and

6. Award such other and further relief as this Court deems just and proper.

Respectfully submitted,

Date: January 29, 2026

Respectfully Submitted,
NY LOFT, LLC.

By its attorneys,
BERNSTEIN SHUR, SAWYER & NELSON, P.A.

*/s/ Edward J. Sackman*
Edward J. Sackman, BBO No. # 704383
670 N. Commercial Street, Suite 108
P.O. Box 1120
Manchester, New Hampshire 03105
(603) 623-8700
nsackman@bernsteinshur.com